# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY S. STONE, and<br>BARBARA J. STONE, | : | No. 3:09cv264 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| ELEXCO LAND SERVICES, INC., and<br>SOUTHWESTERN ENERGY<br>PRODUCTION COMPANY, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion to dismiss the instant complaint. Having been briefed, the matter is ripe for disposition.

**Background**

This case arises out of a lease entered into between the plaintiffs and Defendant Elexco Land Services, Inc. (See Complaint (hereinafter "Complt.") (Doc. 1-2)). Plaintiffs and Defendant Elexco Land Services, Inc. entered into a preprinted form Paid Up Oil and Gas Lease prepared by the defendant on November 8, 2007. (Id. at ¶ 5). The parties signed a memorandum of lease, which defendant prepared, on the same day. (Id. at ¶ 6). As inducement for signing this oil and gas lease, Defendant authorized its agents to tell plaintiffs that Elexco would pay plaintiffs $225.00 per acre. (Id. at ¶ 8). The property in question consisted of approximately 142.51 acres, and defendants thus offered plaintiffs $32,064.75 as consideration for

the lease. (Id. at ¶¶ 4, 9). During the negotiations surrounding the lease, defendant's agent told the plaintiffs that "'Defendant would never pay any more than $225.00 per acre so they better take the $225.00 per acre and that the Plaintiffs will never get anymore." (Id. at ¶ 10). Plaintiffs later learned that this representation was false, and that Defendant Elexco had paid neighbors more than $225.00 per acre for leases. (Id. at ¶ 11).

On January 8, 2009, plaintiffs filed a complaint in the Court of Common Pleas of Susquehanna County, Pennsylvania. Defendants filed a notice of removal (Doc. 1) with this court on February 9, 2009. Plaintiffs' complaint raises two causes of action. Count I alleges that plaintiffs were fraudulently induced by defendants' agent's knowingly false representation that Elexco would never pay more than $225.00 an acre to sign the lease for their land. Plaintiffs also allege that defendants' agent falsely told them they would receive a royalty of one-eighth of the amount realized from sale of gas at the well, when the lease deducted certain costs downstream from the wellhead before payment. Count II seeks a declaration from the court voiding the lease. The plaintiffs allege that the gas lease is invalid because it failed to provide for the minimum royalty payment required under Pennsylvania law.

Defendants then filed a motion to dismiss the case (Doc. 2). Both sides briefed the issues, bringing the case to its present posture.

**Jurisdiction**

2

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiffs are Pennsylvania residents. Defendant Elexco Land Services, Inc. is a New York Corporation with its principal place of business in that state. Defendant Southwestern Energy Production Company is a Texas corporation with its principal place of business in Texas. The amount in controversy exceeds $75,000.

**Legal Standard**

This case is before the court pursuant to defendants' motion to dismiss the case for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

Defendants seek dismissal of each of the complaint's counts. The court will address each in turn.

**1. Validity of the Lease**

Plaintiffs seek a declaration from the court that the lease the parties signed is

3

invalid under Pennsylvania law because it does not provide the minimum royalty required by statute. Defendants argue that the lease provides all the law requires.

At question in this dispute is the provision of the lease that provides for royalty payments. That provision provides:

> 3. Royalty Payment. For all Oil and Gas Substances that are produced and sold from the leased premises, Lessor shall receive as its royalty one eighth (1/8th) of the sales proceeds actually received by Lessee from the sale of such production, less this same percentage share of all Post Production Costs, as defined below, and this same percentage share of all production, severance and ad valorem taxes. As used in this provision, Post Production Costs shall mean (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production.

The dispute here centers around whether this lease meets Pennsylvania statutory requirements that gas lease provide the landowner a minimum royalty. Under the Pennsylvania Statutes section titled "Oil and Gas Leases," a lease conveying rights to remove or recover oil or natural gas is invalid unless it guarantees that the lessor receives at least one-eighth (1/8th) royalty of all oil or natural gas recovered or removed. 58 PENN. STAT. § 33.[1]

---

[1] Specifically, the law provides:
> A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the Lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.

58 P.S. § 33.

4

In the instant case, the lease provides for a royalty of one-eighth of the amount realized from the sale of gas produced from the well, less one-eighth of the post-production costs and one-eighth of the taxes incurred on the gas. (Lease at ¶ 3). The lease defines "post-production costs" as "(i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production." (Id.). Plaintiff argues that because the lease calls for the subtraction of certain costs from the royalty, the lease does not comply with Pennsylvania law. Defendant argues that the royalty provision of the lease is the standard in the industry and provides all that is required by Pennsylvania law.

The court notes that a plain reading of the statute supports the plaintiff's position. The statute calls for a guaranteed one-eighth royalty and does not provide for the subtraction of any costs. In their brief, however, defendants argue that the term "royalty" used in the statute should be construed to allow for the deduction of post-production costs. Defendants insist that industry standard and practice in gas-producing states, as well as case-law from Pennsylvania and other jurisdictions, establishes that a lessor receives a full 1/8 royalty even after the costs mentioned in the lease here in question are subtracted. Plaintiffs' claims, defendants assert,

ignore the standard industry practice.² The question here is thus how "royalty" should be interpreted.

With regard to statutory construction of terms, Pennsylvania law provides: "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; **but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition**." 1 PENN. CONS. STAT. § 1903(a) (emphasis added); Coleman v. W.C.A.B., 842 A.2d 349, 353 (Pa. 2004) ("Generally, words and phrases are construed according to their common usage, and technical words and phrases that have acquired peculiar and appropriate meaning are accorded that meaning.").

Defendants urge us to find that "royalty" has developed peculiar meaning in the oil and gas industry, thus we should apply that meaning as opposed to the

---

²The Court of Common Pleas of Susquehanna County Pennsylvania recently ruled on a similar issue involving the term "royalty" in a gas lease. (See Doc. 44, Kilmer v. Exleco, No. 2008-57, (Susquehanna County Court of Common Pleas, March 16, 2009)). The lease in that case called for the subtraction of post-production costs from the one-eighth royalty. (Id. at 2). The lessees asserted that the lease was invalid as it did not provide the minimum mandatory one-eighth royalty. (Id.). The court found that on its face, the royalty statute "does not prohibit the inclusion of 'post production' costs to calculate the one-eighth royalty." (Id. at 3). Therefore, the parties were free to negotiate the calculation of the royalty. (Id.). We respectfully disagree with the Kilmer analysis. The issue presented is whether the mandatory one-eighth royalty is achieved if post-production costs are deducted before payment. To make such a determination, it is necessary to construe the term "royalty" as used in the statute. We are not convinced that merely because the statute is silent on whether post-production costs can be deducted means that such costs can in fact be legally deducted from the royalty.

6

common and approved usage of the term.  Defendants' position is that the "overwhelming body of caselaw defines a 'royalty' as an interest or the proceeds from the sale of that interest which are free from the costs of drilling, completing and equipping the well so as to bring the oil and gas to the surface."  Thus, if the lessee drills a well and finds no oil or gas, the loss is on the lessee.  Defendants distinguish the costs of actually bringing the gas to the surface from the costs incurred after the gas leaves the wellhead.  They claim that these costs are not involved in determining the 'royalty'.  Such costs, as set forth in the lease, include: "all gathering, dehydration, compression, treatment, processing, marketing and transportation[.]"  (Lease ¶ 3).  Under defendants' definition of the term, "royalty" means the proceeds from the sale of the gas after all the costs of production have been paid by the gas company.  The allocation of post-production expenses is separate and is determined by other provisions in the lease.

Plaintiff, however, points out that not all jurisdictions follow the definition of "royalty" that defendant proposes.  Several jurisdictions determine the royalty based upon the "First Marketable Product Doctrine."  Under this doctrine, so-called "post-production costs" should not be deducted from a royalty payment.  The Pennsylvania Supreme Court Pennsylvania recognized this theory in a decision that is over one hundred years old, but evidently still good law. See Iams v. Carnegie Natural Gas Co., 45 A. 54 (Pa. 1899).

In fact, the cases cited by the defendant recognize that two schools of thought

7

exist. For example, in Garman v. Conoco, Inc., 886 P.2d 652, 657 (Colo. 1994), the Colorado Supreme Court explained as follows:

> No consensus exists regarding the allocation of expenses incurred after the discovery of gas. . . .Two lines of cases have developed in the oil producing states based upon differing views of when production is established and a royalty interest accrues. Texas and Louisiana have adopted the rule that nonoperating interests must bear their proportionate share of costs incurred after gas is severed at the wellhead. See, e.g., Dancinger Oil & Refineries v. Hamill Drilling Co., 171 S.W.2d 321 (Tex.1943); *658 Martin v. Glass, 571 F.Supp. 1406, 1415 (N.D.Tex.1983) ("Under the law of Texas, gas is 'produced' when it is severed from the land at the wellhead."), aff'd 736 F.2d 1524 (5th Cir.1984); see also Merritt v. Southwestern Elec. Power Co., 499 So.2d 210 (La.Ct.App.1986) (under Louisiana's reconstruction approach royalty payments are calculated by deducting costs incurred after gas reaches the wellhead). . . .In Kansas and Oklahoma a contrary rule has developed based on an operator's implied duty to market gas produced under an oil and gas lease. Wood v. TXO Production Corp., 854 P.2d 880, 882 (Okla.1992) ("[T]he implied duty to market means a duty to get the product to the place of sale in marketable form."); Gilmore v. Superior Oil Company, 192 Kan. 388, 388 P.2d 602, 606 (1964) ( "Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product."). Wyoming has codified the marketability approach. The Federal government also requires that a lessee "place gas in marketable condition at no cost to the Federal Government...."
> Arkansas and North Dakota have reached similar conclusions when considering lease royalty clauses which are silent as to allocation of post-production costs. A lease which provides for the lessor to receive "proceeds at the well for all gas" means gross proceeds when the lease is silent as to how post-production costs

> must be borne. Hanna Oil & Gas Co. v. Taylor, 297 Ark. 80, 759 S.W.2d 563, 565 (1988); see also West v. Alpar Resources, Inc., 298 N.W.2d 484, 491 (N.D.1980) (when the lease does not state otherwise lessors are entitled to royalty payments based on percentage of total proceeds received by the lessee, without deduction for costs).
> 30 C.F.R. § 206.153(i) (1993).

Garman v. Conoco, Inc., 886 P.2d 652, 657-59 (Colo. 1994)(internal footnotes omitted).

We will deny the defendant's motion to dismiss. Because two different schools of thought exist with regard to the term "royalty" we will not conclude at this early stage in the litigation that the term is subject to a "peculiar" meaning under the rules of statutory construction. Furthermore, defendants' brief cites to treatises, law review articles, a document from the Pennsylvania Department of Agriculture, legislative history and opinions from other jurisdictions. Many of these opinions deal with summary judgment motions and non-jury trials and construe the term "royalty" as used in a lease, not as statutory construction.[3] It would be premature for the court to dismiss the case at this point. Defendants have not established that the term "royalty" should be construed so as to allow for deduction of costs in the lease and the plaintiff has not established that the term should not be so construed. Although they claim that this is the "industry practice" plaintiffs have pointed out that not all jurisdictions follow this practice. To make a final determination on this issue we have to examine documents outside of the pleadings, which we will not do on a

---

[3] See, e.g., Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118 (Tex. 1996) (which is an appeal of a partial summary judgment and a trial and is relied upon by defendant)

9

motion to dismiss.[4] Thus, the motion will be denied.

### 2. Fraudulent Inducement

Defendants argue that plaintiffs' fraudulent inducement claim should be dismissed. Plaintiffs cannot, they contend, base a fraudulent inducement claim on parole evidence. Moreover, even if plaintiffs could raise a fraudulent inducement claim based on parol evidence, the allegations in the complaint do not assert that defendant's agents uttered any knowingly false statements.

Fraudulent inducement may be found where a contracting party made false representations "that induced the complaining party to agree to the contract." Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007) (internal quotation marks and citations omitted). The law provides that:

> "Fraud" consists of "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). To demonstrate fraud, the plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 207-08, 647 A.2d 882, 889 (1994).

---

[4] We find it appropriate to deny the motion to dismiss with regard to the royalty as we are denying the motion to dismiss on the other claim on the complaint anyway and the case will have to move forward regardless.

10

> The essence of fraud is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim."

Martin v. Hale Products, Inc., 699 A.2d 1283, 1287-88 (Pa. Super. Ct. 1997). .

Count I of plaintiffs' complaint advances a cause of action for fraudulent inducement (Complt. at ¶¶ 14-25) regarding the statements made by defendant's representative that plaintiff would never be offered more than $225.00 per acre to lease the property and that the lease would provide for a 1/8 royalty on gas produced. The complaint avers that "Plaintiffs were told that 'Defendant would never pay any more than $225.00 per acre so they better take the $225.00 per acre and that the Plaintiffs will never get anymore [sic].'" (Id. at ¶ 15). The complaint insists that these statements were false, and that the company had paid and continues to pay more than $225.00 an acre to lease land. (Id. at ¶ 19). Nonetheless, at the time plaintiffs justifiably relied on this representation. (Id. at ¶¶ 17-18). Had Plaintiffs known Defendant's representations were false, Plaintiffs would not have entered into the lease. (Id. at ¶ 20). They contend that they were damaged by these false representations. (Id. at ¶ 17). Plaintiffs also allege that the defendants falsely claimed that the lease's royalty terms would provide them with a 1/8th royalty from the amount realized from the sale of gas at the well. (Id. ¶ 22). The lease, however, subtracted certain costs from that royalty and was less than the 1/8th promised. (Id. at ¶ 23).

11

Defendants argue that these statements are insufficient to support a fraudulent inducement cause of action. The court disagrees. The plaintiffs claim that defendants' agent represented to them that they would never receive more than $225.00 per acre for leasing their land. Since that payment was compensation for the lease they signed, it was material to the matter at hand. They also contend that the representation was false, and that the defendants–who had already signed leases for more than $225.00 an acre–knew that it was false. The representation was also clearly intended to convince plaintiffs to sign the lease, as it appeared designed to convince them they could not do any better. Plaintiffs also contend that their reliance on this representation was reasonable. Finally, since others received more than $225.00 for leasing their land, plaintiff's reliance was to their detriment. As such, plaintiffs have stated a claim for fraudulent inducement on this matter. See Martin, 699 A.2d 1287-88.

Regardless of whether these claims are sufficient for a fraudulent inducement cause of action, defendants argue that the parol evidence rule bars plaintiff from using this evidence outside the written contracts to make out a fraudulent inducement claim. They point to Toy v. Metropolitan Life Ins. Co. to argue that a fraudulent inducement claim that "rests entirely on parol evidence" is barred. (Defendants' Brief at 23). The court agrees with the defendants that the parol evidence rule bars evidence of "previous oral or written negotiations or agreements involving the same subject matter as the contract . . . to explain or vary the terms of

the contract." Yocca v. Pittsburgh Steeler Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004). The court finds that defendants read Toy too broadly, however, in arguing that a fraudulent inducement claim cannot be supported by parol evidence. The court in Toy found that representations made prior to contract formation are considered superseded and disclaimed when the parties have executed a fully integrated written agreement. Toy, 928 A.2d at 206-07. Of course, the mere existence of a contract does not make that contract fully integrated, and "for the parol evidence rule to apply, there must be a writing that represents the parties' entire contract, and that where there exists such a writing is determined by assessing whether the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement." Id. at 204. The issue presented here, therefore, is whether the contract is fully integrated and the parol evidence rule applies to bar plaintiffs' fraudulent inducement claim.

We turn to Pennsylvania law to determine if an agreement is integrated so as to make the parol evidence rule applicable:

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties.... An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant

13

> to be just that and thereby expresses all of the parties'
> negotiations, conversations, and agreements made prior
> to its execution.

Yocca, 854 A.2d at 497-98 (internal quotation marks, brackets and citations omitted).

Here, the lease contract does not contain an integration clause which provides that the contract is the entire agreement of the parties. As such, the court must look to the contract terms to see if the contract is complete in itself, eliminating any uncertainty as to the object and extent of the parties' engagement. Complicating the issue is the fact that the parties have provided the court with several other signed agreements that augment the lease agreement.

The lease agreement the parties signed recites that "[I]n consideration of one ($1.00) in hand paid and the covenants herein contained, Lessor hereby grants leases and lets exclusively to Lessee the following described land." (Plaintiffs' Exh. F.). The lease does not reference any other form of payment or other valuable consideration that makes up the agreement between the parties. Defendant has submitted, however, a "consideration letter" or "payment letter" that is signed by both the plaintiff and defendant. This document contains the $32,064.75 that the parties agree defendants paid plaintiffs in exchange for the lease. (Doc. 8-3, pg. 2). That document does not contain an integration clause. Instead, it recites that Elexco Land Services promises to pay plaintiffs the more than $31,000 within sixty days of the writing. (Id.). The document also states that "[t]his payment is for Bonus Consideration and rental period November 8th 2007 to November 7th 2017, covering 142.51 gross acres which covers property described in the Oil and Gas lease

14

executed this day." (Id.).

Defendants argue that it is appropriate that the separate writings be considered together. We agree with this proposition, but it is not determinative of this issue. The law provides that:

> It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together.

Shehadi v. Northeastern Nat'l Bank, 378 A.2d 304, 306 (Pa. 1977) (citations omitted). See e.g, Amin v. Lammers, No. Civ. A. 94-5980, 1995 U.S. Dist. WL 231048 (E.D. Pa. April 18, 1995) ("Under Pennsylvania law, separate contracts that are entered into at the same time as part of the same business action are construed together.") (citations omitted); International Milling Co. v. Hachmeister, 110 A.2d 186, 191 (Pa. 1955) ("If contracting parties choose they may express their agreement in one or more writing and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of intent of the parties.")(citations omitted); Kroblin Refrigerated Express, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.") (citations omitted). See also, Amin at *12 (citing International Milling

15

Co., 110 A.2d at 191).

By themselves, neither document could constitute the complete agreement between the parties. The lease agreement never mentions the second document, and the second document refers to the lease agreement. Read together, however, the documents do not appear to constitute the entire agreement between the parties, as they do not mention essential terms of the financial transaction. The lease agreement contains no mention of any agreement to provide more compensation for signing the lease than one dollar and the royalty payments guaranteed in Section 3 of the document. The document also does not reference any "bonus consideration" or describe how such consideration would be calculated. Clearly, however, the parties agreed to some payment beyond that recited in the lease as consideration, and the second writing establishes that such payment should occur. That document, however, does not define the term "bonus consideration," and does not explain the exact purpose of the payment. More important, the document does not explain how the parties calculated the amount of this payment, but instead merely lists the acres to which that payment applies. Since "[t]he writing must be the entire contract between the parties if parol is to be excluded," the court concludes that at this juncture the parol evidence rule should not apply and will not dismiss plaintiffs' fraudulent inducement claim on that ground. Fountain Hill Millwork Bldg. Supply Co. v. Belzel, 587 A.2d 757, 760 (Pa. Super. Ct. 1991) (quoting Gianni v. Russel & Co., 126 A. 791,792 (Pa. 1924).

Because two contracts are at issue and they do not read together establish the complete agreement of the parties, we find it inappropriate to grant the defendant's motion to dismiss based upon the parol evidence rule at this time. Discovery and evidence presented to the court may be helpful in ultimately determining this issue. For example, it may be pertinent to the ruling to know when exactly the different agreements were signed, that is, whether they were executed at the same time, and if not, which one was entered into first and how much time elapsed between signing the agreements. Therefore, we will deny this argument at this time without prejudice to the defendant raising it again at the appropriate time.

**Conclusion**

For the reasons stated above, the court will deny the defendants' motion to dismiss. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GARY S. STONE, and : No. 3:09cv264
BARBARA J. STONE, :
      **Plaintiffs** : (Judge Munley)
:
    **v.** :
:
ELEXCO LAND SERVICES, INC., and :
SOUTHWESTERN ENERGY :
PRODUCTION COMPANY, :
      **Defendants** :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 1st day of June 2009, the defendants' motion to dismiss the complaint (Doc. 2) is hereby **DENIED.**

                                        **BY THE COURT:**

                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**